[Crim. No. 18967. Second Dist., Div. One. Sept. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
RAUL LOPEZ HEREDIA, Defendant and Appellant.

COUNSEL

Michael G. Steiniger, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Mark A. Levin, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**THOMPSON, J.**—This is an appeal after a denial of a 1538.5 motion and a plea of guilty to one count of violation of section 11911 of the Health and Safety Code. We reverse the conviction because of *Mozzetti* v. *Superior Court,* 4 Cal.3d 699 [94 Cal.Rptr. 412, 484 P.2d 84], decided while this appeal was pending.

*Facts*

At approximately 4 a.m., on the morning of September 15, 1969, Officer Michael Caldero, a Los Angeles County deputy sheriff, was patrolling northbound on Atlantic Boulevard. He observed a vehicle parked about 2½ feet from the curb, partially in front of a red zone and partially blocking a driveway near the Lamplighter Bar at 1407 South Atlantic Boulevard. Caldero and his partner approached the vehicle in order either to remove it or to cite the registered owner for a Vehicle Code violation. As he approached the car, Caldero noticed a young lady sitting in the right front seat slumped to the right with her head on the back of the seat. Appellant was standing next to the right front door of the vehicle, leaning with his elbows and forearms partially inside the right front window. As the officers came up behind the car, appellant reached inside the window with his right hand toward the floor as if secreting some object on the floorboard in front of the seat. Caldero went to the right front door of the vehicle where he had a closer view of the female occupant. She appeared intoxicated, with eyes extremely glassy and dilated, head tilted back and poor control over her movements. There was blood spattered on the legs of her white capri pants. Caldero asked appellant what had happened. Appellant replied that the woman was his common law wife and that they had had an argument.

The officer asked the young lady her name and requested her to step from the vehicle. She complied after the officer opened the door for her, but

did not seem capable of coordinating her movements. As she stepped from the vehicle, Caldero observed what appeared to be a shiny gun lying on the floor in front of the passenger seat. He reached inside the car and picked up a loaded .38 caliber chromed derringer. Appellant admitted ownership of the gun but objected to a further search of the vehicle.

Caldero placed both parties under arrest, the young lady for drunkenness and appellant for violation of section 12031 of the Penal Code (carrying a loaded firearm in a vehicle upon the highway), a misdemeanor. Caldero called for help in order to transport the two arrestees. Prior to the removal of the appellant from the scene, the officer patted him down for weapons and found none. He then asked appellant for the keys to the vehicle in order to have it impounded. Appellant asked if he could have a friend drive the car home or if he could leave it in the parking lot at the bar. Caldero advised him that the vehicle must be impounded. Appellant gave Caldero his keys. After appellant had been transported to jail, Caldero proceeded to inventory the contents of the car for valuables prior to impounding it. In the trial court, Caldero testified expressly that he was not looking for further instrumentalities of a crime but was conducting an inventory for valuables incident to the impound of a vehicle to be removed pursuant to Vehicle Code section 22651. The keys given to the officer by appellant did not unlock the trunk of the vehicle. However, Caldero was able to open the trunk by "pushing in" the trunk lock and lifting the lid with his fingers. In the trunk of the vehicle, Caldero found 5 brown paper bags containing approximately 4,500 white double scored amphetamine tablets.

Appellant was charged with one count of violation of section 11530.5 of the Health and Safety Code, possession of marijuana for sale,[1] and one count of violation of section 11911 of the Health and Safety Code, possession of amphetamine sulfate for sale. He entered a plea of not guilty and moved, pursuant to Penal Code section 1538.5, to suppress the evidence of the pills as the product of an illegal search. The motion was denied. Appellant withdrew his plea of not guilty of violation of section 11911 and entered a plea of guilty. The People dismissed the charge of violation of section 11530.5 in the interest of justice. Although the information does not allege a prior conviction, there is colloquy in the record which indicates that the appellant was on parole for another offense at the time of the commission of the crime alleged here. The trial court sentenced appellant to state prison for the term imposed by law, the term to run concurrently with any sentence presently being served by appellant. This appeal followed.

---

[1]The record on appeal fails to reveal any evidence regarding that count.

## Contentions on Appeal

On appeal, appellant raises two contentions of error: (1) that his initial arrest for violation of section 12031 of the Penal Code was unlawful since there was no evidence that the possession of the gun observed by the officer took place in a statutorily prohibited locale; and (2) that the court erred in denying appellant's motion to suppress the evidence. Since our disposition of the case turns on our determination of the second contention of appellant, we deal only with it.

## The Inventory of the Car

In his original brief, appellant relied primarily on *Virgil* v. *Superior Court*, 268 Cal.App.2d 127 [73 Cal.Rptr. 793]. By letter, he has supplemented his brief citing *Mozzetti* v. *Superior Court*, 4 Cal.3d 699 [94 Cal. Rptr. 412, 484 P.2d 84], decided after the trial of the case at bench. *Mozzetti* deals definitively with the question of the propriety of the police procedure of "inventory" where a vehicle is removed from the highway pursuant to Vehicle Code section 22651. *Mozzetti* holds that such an inventory "involves a substantial invasion into the privacy of the vehicle owner" and is a "search" governed by "the requirements of reasonableness set down in the Fourth Amendment." (*Mozzetti* v. *Superior Court, supra,* p. 706.) Since respondent concedes a lack of probable cause to conduct a search as contrasted with a basis to inventory the content of the auto, *Mozzetti* governs disposition of the matter at bench if *Mozzetti* is to be given retrospective effect. We conclude that it is to be given such an effect with respect to all cases not final on April 30, 1971, the date it was decided.[2]

We reach our conclusion by an analysis of decisions on retroactivity beginning with *Ker* v. *California,* 374 U.S. 23 [10 L.Ed.2d 726, 83 S.Ct. 1623]. *Ker* holds that *Mapp* v. *Ohio,* 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684], applying the federal rule excluding illegally obtained evidence to state criminal proceedings, is applicable to cases pending on direct review at the time *Mapp* was decided. The court in *Ker* reasons that *Mapp* did not state a new principle of constitutional law but that its rule had been foreshadowed by *Wolf* v. *Colorado,* 338 U.S. 25 [93 L.Ed. 1782, 69 S.Ct. 1359], in which the United States Supreme Court stated that Fourth Amendment guarantees against unreasonable searches apply to state process but declined to enforce the exclusionary rule in the context of the litigation before it. (See also *Fahy* v. *Connecticut,* 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229]; *Stoner* v. *California,* 376 U.S. 483 [11 L.Ed.2d 856, 84 S.Ct. 889]; *Linkletter* v. *Walker,* 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731].)

---

[2]We are not called upon to determine whether *Mozzetti* may supply the basis for collateral attack upon a final judgment.

The decision in *Ker* contrasts with decisions holding that other rules of criminal law or procedure are purely prospective in operation applying only to trials (or possibly police conduct) occurring after the decision enunciating the rule. *Tehan* v. *Shott*, 382 U.S. 406, 412 [15 L.Ed.2d 453, 457-458, 86 S.Ct. 459], in holding that *Griffin* v. *California*, 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] is to be applied prospectively, states: "For more than half a century, beginning in 1908, the Court adhered to the position that the Federal Constitution does not require the States to accord the Fifth Amendment privilege against self-incrimination. . . . Because of this position, the Court during that period never reached the question whether the federal guarantee against self-incrimination prohibits adverse comment upon a defendant's failure to testify at his trial. . . . The Court made not the slightest deviation from that position during a period of more than 50 years." *Desist* v. *United States*, 394 U.S. 244, 248 [22 L.Ed.2d 248, 254, 89 S.Ct. 1030], in holding that *Katz* v. *United States*, 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] was to be given prospective application only, states: "[*Katz*] was a clear break with the past. . . ." *Stovall* v. *Denno*, 388 U.S. 293, 299 [18 L.Ed.2d 1199, 1205, 87 S.Ct. 1967], in holding the *Wade-Gilbert* rule to be prospective in application only, says: "Today's rulings were not foreshadowed in our cases; no court announced such a requirement until *Wade* was decided by the Court of Appeals. . . ." *Johnson* v. *New Jersey*, 384 U.S. 719, 731 [16 L.Ed.2d 882, 891, 86 S.Ct. 1772], in holding that *Miranda* was to be applied prospectively, compares the rule of *Miranda* to the rationale of *Ker* permitting retroactivity of *Mapp* to all cases still open on the date of that decision, saying: ". . . the States at least knew that they were constitutionally forbidden from engaging in unreasonable searches and seizures under *Wolf* v. *Colorado* [citation omitted]."

Thus it appears that, in the context of applicability to a matter open on direct review, a rule of decisional law is not necessarily retroactive and need not necessarily be applied if it is enunciated as a change, departure, or overturn of previous decisional law. Where, however, that rule is one which has been foreshadowed by prior decisions or is stated as an application of a previously existing principle, it must be applied to open cases.

Our reading of *Mozzetti* v. *Superior Court*, *supra*, compels us to conclude that our Supreme Court does not construe *Mozzetti* as establishing a new rule of constitutional law. Rather, it appears that in disapproving language stating that an "inventory" is not a search within the meaning of the Fourth Amendment, the court was correcting what it conceives to be an erroneous line of cases promulgated by some Courts of Appeal. In *Mozzetti*, the court points to a series of cases, beginning in 1965 from both the United State Supreme Court and the California Supreme Court, which specifically

reject the concept that a police inventory is not a search within the meaning of the Fourth Amendment. (*Mozzetti* v. *Superior Court, supra,* p. 705, and cases there cited.)

Since *Mozzetti* applies an existing principle rather than new law, we determine that it is applicable to the case at bench which was pending on appeal when *Mozzetti* was decided.[3] Viewed pursuant to the dictates of *Mozzetti,* the inventory of the trunk of appellant's car was an unreasonable search, and the trial court erred prejudicially in denying the motion to suppress the evidence. We do not here determine that the prosecution may not on retrial be able to develop an objective basis of probable cause to justify the search of the vehicle. (See *People* v. *Carnesi,* 16 Cal.App.3d 863, 867 [94 Cal.Rptr. 555].) Rather, we decide the case at bench as it is presented to us. Thus, we deem ourselves bound by the statements of the People's witness that he was not looking for any other evidence of the offense, but only inventorying for valuables. We are similarly bound by the theory of respondent's brief which concedes a lack of probable cause. We note also the right of the Adult Authority to consider the evidence discovered in appellant's car in any proceeding to revoke his parole. The evidence is admissible for that purpose. (*In re Martinez,* 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734].)

### Disposition

The judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 20, 1971, and respondent's petition for a hearing by the Supreme Court was denied November 18, 1971.

---

[3]We note, also, in support of our conclusion, that our Supreme Court has transferred pending appeals to the Court of Appeal "for reconsideration in light of *Mozzetti* v. *Superior Court*" (see, e.g., *People* v. *Hanley,* Crim. 15354, and *Mestas* v. *Superior Court* [S.F. 22807] 5 Cal.3d Minutes, p. 1, Cal. Official Reports Advance Sheets No. 22).